## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|                        |     |                         |
| ---------------------- | --- | ----------------------- |
| STATE OF WASHINGTON,   | )   | No. 73904-2-I           |
|                        | )   |                         |
| Respondent,            | )   | DIVISION ONE            |
|                        | )   |                         |
| v.                     | )   |                         |
|                        | )   |                         |
| CLIFTON EUGENE TURNER, | )   | UNPUBLISHED             |
|                        | )   |                         |
| Appellant.             | )   | FILED: February 27, 2017 |
|                        | )   |                         |

Cox, J. – Clifton Turner appeals his judgment and sentence based on convictions of two counts of second degree child molestation and one count of fourth degree assault. The trial court did not abuse its discretion in admitting evidence of the victim's emotional and psychological trauma following the offenses without supporting expert testimony. Two of the several sentencing conditions are improper: substance abuse counselling and submitting to Breathalyzer tests. The criminal history in the judgment and sentence fails to list two prior convictions used to compute the correct offender score of five. Appellate costs shall not be awarded to the State. We affirm in part, vacate in part, and remand with instructions.

The victim in this case is M. Turner met M.'s mother, L., when they were both patients in drug treatment. Two and a half years later, Turner and L. moved in together. M. would visit often.

## TRAUMA EVIDENCE

Turner argues the trial court abused its discretion in admitting evidence of M.'s behavior following the offenses without supporting expert testimony linking her behavior to Post-Traumatic Stress Disorder (PTSD). We disagree.

We review for abuse of discretion a trial court's decision to admit evidence.[1] A trial court abuses its discretion when its ruling is manifestly unreasonable or it bases its decision on "untenable grounds or reasons."[2]

The parties have couched their argument in the context of ER 702, which governs the admission of expert opinion testimony. ER 702 allows the admission of expert testimony where it will help the trier of fact understand evidence or facts at issue. But no expert opinion was presented in this case.

Rather the parties contest the admission of M.'s alleged opinion testimony. ER 701 governs our analysis of this testimony.

That rule provides for the admission of lay opinion testimony when it is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge."

There is no question that M.'s testimony was based on her own perception. She testified to her own behavior of self-harm and substance usage. Similarly, there is no question that such testimony was helpful to understanding

---

[1] State v. Gresham, 173 Wn.2d 405, 419, 269 P.3d 207 (2012).

[2] Wade's Eastside Gun Shop, Inc. v. Dep't of Labor & Indus., 185 Wn.2d 270, 277, 372 P.3d 97 (2016).

her relevant experience of sexual abuse, a central determination of fact in this case.

Thus, the parties' dispute focuses on whether M.'s testimony was based on specialized knowledge.

In State v. Black, the supreme court explained that a lay witness may testify to her own experience of trauma without supportive expert testimony.[3] In that case, the court reversed Michael Black's conviction because the trial court had abused its discretion in admitting expert testimony about rape trauma syndrome.[4] The relevant expert, a counselor who had counseled the alleged victim for several months, testified that there was "a specific profile for rape victims and [the victim] fits in."[5]

On review, the supreme court found this testimony to be scientifically unreliable because "there is no 'typical' response to rape."[6] The counselor's profiling technique was "not the type of scientific test that reliably determines whether a rape has occurred, as the characteristic symptoms may follow any psychologically traumatic [experience]."[7]

---

[3] 109 Wn.2d 336, 349, 745 P.2d 12 (1987).

[4] Id. at 350.

[5] Id. at 339 (emphasis omitted).

[6] Id. at 343.

[7] Id. at 348.

4

The supreme court further concluded such testimony was not helpful to the trier of fact because it was overly prejudicial.[8] Specifically, the expert had testified that the alleged victim fit the profile of rape victims, improperly suggesting the guilt of the defendant.[9]

But the court clarified that it did:

> not imply, of course, that evidence of emotional or psychological trauma suffered by a complainant after an alleged rape is inadmissible in a rape prosecution. The State is free to offer lay testimony on these matters, and the jury is free to evaluate it as it would any other evidence. We simply hold that the State may not introduce expert testimony which purports to scientifically prove that an alleged rape victim is suffering from rape trauma syndrome.[10]

Here, the trial court admitted M.'s testimony concerning certain changes in her behavior. It concluded that M. could "testify to her own behavior and her own feelings." But it instructed the State not to ask questions that would require a medical conclusion. Nothing in the record suggests the State violated this instruction. The jury was fully capable of deciding whether the changes to M.'s behavior arose in response to the past trauma of this molestation without expert testimony. There was no abuse of discretion in admitting M.'s testimony.

Turner points to numerous cases that upheld the admission of expert testimony connecting a person's response to previous trauma when the response

---

[8] Id. at 349.

[9] Id.

[10] Id.

might have seemed counterintuitive to the layperson.[11] These cases fail to establish that expert testimony is necessary rather than merely admissible under such circumstances. Additionally, the testimony in this case did not present any counterintuitive inference.

Here, the trial judge instructed the jurors that they could consider inferences from circumstantial evidence based on their "common sense and experience." Based on this instruction and the principle elucidated in Black, the jury could properly consider M.'s relevant testimony against the backdrop of their own experience.

## SENTENCING CONDITIONS

Turner argues the trial court improperly imposed substance abuse treatment as a condition of community custody. We agree.

The trial court's sentencing authority depends on statute.[12] Generally, we review for abuse of discretion the imposition of sentencing requirements.[13] But we review de novo that imposition when the trial court's statutory sentencing authority is challenged.[14]

---

[11] State v. Ciskie, 110 Wn.2d 263, 274, 751 P.2d 1165 (1988); State v. Allery, 101 Wn.2d 591, 597, 682 P.2d 312 (1984); State v. Green, 182 Wn. App. 133, 139, 328 P.3d 988 (2014); State v. Bottrell, 103 Wn. App. 706, 717, 14 P.3d 164 (2000).

[12] In re Pers. Restraint of Carle, 93 Wn.2d 31, 33, 604 P.2d 1293 (1980).

[13] State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

[14] Id.

The Sentencing Reform Act authorizes the trial court to impose certain prohibitions or affirmative conditions of community custody so long as they are "crime-related."[15] A prohibition is "crime-related" when it "directly relates to the circumstances of the crime for which the offender has been convicted."[16] It "may [also] include a prohibition on the use or possession of alcohol or controlled substances if the court finds that any chemical dependency or substance abuse contributed to the offense."[17]

When the trial court sentences the offender to community custody, RCW 9.94A.703(3)(c) authorizes it to require that the offender "[p]articipate in crime-related treatment or counseling services.[18] RCW 9.94A.703(3)(d) also authorizes the trial court to require that the offender "[p]articipate in rehabilitative programs or otherwise perform affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community."[19]

But these two provisions present an ambiguity. A statute is ambiguous "if it can be reasonably interpreted in more than one way."[20] In this statute, it is unclear whether the rehabilitative programs that the trial court may impose must

---

[15] RCW 9.94A.505(9).

[16] RCW 9.94A.030(10).

[17] RCW 9.94A.505(9).

[18] RCW 9.94A.703(3)(c).

[19] RCW 9.94A.703(3)(d).

[20] State v. Watson, 146 Wn.2d 947, 955, 51 P.3d 66 (2002).

be "crime-related" or "reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community." Thus, the trial court could impose such programs even if not "crime-related," despite other clear text in the statute.

Division Two of this court addressed these provisions in State v. Jones.[21] The court examined the identical statutory precursors to what are now RCW 9.94A.703(3)(c) and (d).[22] It cited the rule requiring that statutes be construed to avoid rendering any provision superfluous.[23] It explained that subsection (c), allowing the court to order such services so long as they are crime-related, would be rendered superfluous if subsection (d) were construed to allow courts to order substance counselling or treatment without showing that the need for such services was "crime-related."[24] Thus, the court concluded that a trial court could impose treatment programs under subsection (d) "only if the evidence shows that [substance use] contributed to the offense."[25] We agree with that reasoning.

Here, the trial court imposed a condition requiring that Turner participate in "substance abuse treatment as directed by the supervising Community Corrections Officer." But no evidence in the record shows that either alcohol or drugs contributed to these offenses.

---

[21] 118 Wn. App. 199, 76 P.3d 258 (2003).

[22] Id. at 207-08.

[23] Id. at 208.

[24] Id.

[25] Id.

On this record, the trial court lacked authority to impose community custody condition 15, requiring that Turner participate in substance abuse counselling. We vacate this condition and direct that it be stricken on remand.

The State argues that even if RCW 9.94A.703(c) is superfluous, to harmonize this superfluity as Jones did, would render superfluous the language in RCW 9.94A.703(d) concerning "the offender's risk of reoffending, or the safety of the community." This argument is not convincing.

Subsection (c) requires the trial court to make a specific conclusion before it orders that a defendant participate in counselling or treatment services. This requirement avoids coercing offenders to undergo rehabilitation unrelated to their crimes. Subsection (d), by contrast, allows the court to order other rehabilitative programs "reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community."

Because substance abuse treatment is at issue, subsection (c) controls and dictates that such services must be crime-related. This case does not meet the requirements of the statute and a fair reading of subsection (d) does not require a different result.

Turner also argues that the court erred in imposing monitoring conditions, requiring him to participate in urinalysis, polygraph, and Breathalyzer tests. We agree in part.

A sentencing court may require that an offender submit to tests to monitor compliance with the other valid conditions of community custody.[26] Specifically,

---

[26] State v. Riles, 135 Wn.2d 326, 342-43, 957 P.2d 655 (1998).

the supreme court has recognized the investigative utility of polygraph tests in monitoring general compliance with sentencing conditions.[27]

Here, the trial court imposed three monitoring conditions. Of these, the court acted within its discretion in requiring that Turner submit to polygraph testing. But the court erred in imposing the Breathalyzer requirement because any alcohol-related condition it was imposed to monitor was not crime-related.

But the trial court acted within its discretion in imposing the urinalysis requirement. RCW 9.94A.703 divides the available conditions on community custody into three categories. Some are mandatory, which the court must impose.[28] Some are discretionary, such as those discussed above.[29] The rest are waivable and imposed, unless the trial court affirmatively waives them.[30] This last category includes the requirement that a defendant "[r]efrain from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions."[31]

Here, the trial court did not waive the above condition. It was thus imposed. The condition that Turner submit to urinalysis testing was proper to monitor whether he was consuming controlled substances.

---

[27] Id.

[28] RCW 9.94A.703(1).

[29] RCW 9.94A.703(3).

[30] RCW 9.94A.703(2).

[31] RCW 9.94A.703(2)(c).

Thus, we hold that the trial court was without authority to impose community custody condition 15 and the Breathalyzer component of condition 16. It did not abuse its discretion in imposing the other challenged conditions.

**STATEMENT OF ADDITIONAL GROUNDS**

Turner argues that the trial court miscalculated his offender score for sentencing purposes in his Statement of Additional Grounds pursuant to RAP 10.10. We hold that the trial court properly determined his offender score as five, but remand with directions that the trial court correct the judgment and sentence to correctly reflect the criminal history used to calculate that score.

RCW 9.94A.525(17) provides the framework for calculating an offender score when the current crime is a sex crime. All current sex crimes count as three. Turner concedes the base score is a three.

The RCW 9.94A.525(17) framework then directs the sentencing court's consideration to RCW 9.94A.525(7)-(9). The court selects one of those subsections based on whether the current offense was nonviolent, violent, or seriously violent. The two felony convictions in this case were child molestation in the second degree. The statute defining that offense does not characterize it as violent.[32] Thus, RCW 9.94A.525(7) provides the appropriate arithmetic for calculating the score here. Under that provision, we add one point for each prior adult felony conviction.

---

[32] RCW 9A.44.086.

11

Here, counsel for Turner properly conceded below that the offender score for his current offenses totaled three. At the sentencing hearing, the trial court had before it certified copies of two prior judgment and sentences for controlled substance felonies. The first of these was entered on October 5, 1993. The second was entered on February 9, 1996. Both serve as qualifying felonies that would add one point each to Turner's current offender score, provided neither "washed."

> Pursuant RCW 9.94A.525(2)(b), Class B prior felony convictions
>
> shall not be included in the offender score, if since the last date of release from confinement . . . pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent *ten consecutive years in the community without committing any crime that subsequently results in a conviction*.[33]

The issue is whether the two prior felony convictions washed due to Turner spending ten consecutive years in the community being crime free. The certified copy of a 2004 controlled substances conviction proved that he did not meet this test. Thus, the two prior convictions, and only those convictions, were properly considered for inclusion in the offender score: five.

The judgment and sentence does not correctly reflect both prior convictions on which basis the offender score of five was calculated. Accordingly, we vacate this judgment and sentence to that extent only and direct the trial court on remand to modify the document accordingly to include the correct prior convictions.

---

[33] (Emphasis added.)

## COSTS

Turner argues that this court should decline to award the State appellate costs should he not prevail. We agree.

RCW 10.73.160(1) gives appellate courts discretion to decline to impose appellate costs on appeal.[34] Under State v. Sinclair, there is a presumption that indigency continues unless the record shows otherwise.[35]

Here, the trial court found at sentencing that Turner is indigent. Nothing in this record overcomes this presumption.

The State counters that the record fails to indicate whether Turner will be unable to pay in the future. This argument is insufficient to overcome the presumption stated in Sinclair. The State also requests that we impose costs because Turner did not litigate this matter for the public's benefit. This argument also fails to overcome the presumption stated in Sinclair. An award to the State for appellate costs is inappropriate under these circumstances.

---

[34] State v. Nolan, 141 Wn.2d 620, 629, 8 P.3d 300 (2000).

[35] 192 Wn. App. 380, 392-93, 367 P.3d 612, review denied, 185 Wn.2d 1034 (2016).

We affirm Turner's conviction, vacate the substance abuse counselling and Breathalyzer conditions, and remand for correction of the judgment and sentence to reflect the correct criminal history and conditions. We deny any award of costs to the State.

_Cox, J._

WE CONCUR:

_Mann, J._                    _Leach, J._